## State of Vermont v. John Spear

[458 A.2d 1098]

No. 193-81

Present: Barney, C.J., Billings, Hill, Underwood and Peck, JJ.

Opinion Filed February 14, 1983

*Andrew B. Crane,* Defender General, *William A. Nelson,* Appellate Defender, and *Nancy E. Kaufman,* Acting Appellate Defender, Montpelier, for Defendant-Appellant.

Underwood, J. This is an appeal from an order of the district court committing the defendant to the Vermont State Hospital in Waterbury. We reverse.

The facts are as follows. The defendant was charged with disorderly conduct, a misdemeanor under 13 V.S.A. § 1026(1). According to the affidavit of probable cause he was in a Dunkin' Donuts shop screaming that United States Senator Robert Stafford did not have any legs because he was a third nation. On March 5, 1981, the defendant appeared in court for arraignment. He was not represented by counsel.

The court was advised that the defendant had been a patient at the Vermont State Hospital in the past, having committed himself there voluntarily. At the suggestion of the state's attorney, the court ordered that the appellant be committed to said hospital for 60 days of evaluation. In this regard, the judge signed a written form "Order for Psychiatric Examination Pursuant to 13 V.S.A. § 4814," asking for an evaluation whether the appellant was competent to stand trial, whether he was insane at the time of the offense, and whether he had the mental state required for the offense, and committing him to

the custody of the Department of Mental Health for a period not to exceed 60 days.

A psychiatric report was filed with the court on March 20, 1981. On April 21, 1981, the public defender's office was appointed to represent the defendant. A competency hearing was held on April 29, 1981. At the hearing a psychiatrist testified that the defendant was not competent to stand trial, that he was insane at the time of the offense, and that he was suffering from chronic schizophrenia. After this testimony the State dismissed the criminal charge. The defendant waived notice of further hearing and the court then proceeded with the question of whether the defendant was "a person in need of treatment" and ought to be hospitalized pursuant to the civil commitment provisions of Title 18.

Following the hearing the court found the defendant to be "a person in need of treatment" and ordered the defendant committed to the state hospital for an additional period not to exceed 90 days under 18 V.S.A. § 7619. This appeal followed.

On appeal the defendant argues, *inter alia*, that (1) the trial court's first order committing him to the state hospital for 60 days should be stricken because he was denied his right to counsel, and (2) the evidence and findings did not support the conclusion that the defendant was a person in need of treatment and the court therefore erred in ordering him committed for an additional 90 days for treatment. We agree with both contentions for the following reasons.

At the time of the March 5th arraignment, which resulted in the 60-day commitment order for a psychiatric examination, the defendant was the subject of pending criminal proceedings. The 60-day order was issued under the authority of 13 V.S.A. §§ 4814 and 4815, the pendency of a criminal prosecution being a prerequisite for such commitment. The pendency of criminal prosecution also triggers the court's obligation to assign counsel. 13 V.S.A. § 5231 provides that a needy person "who is charged with having committed . . . a serious crime, [which includes a misdemeanor, such as 13 V.S.A. § 1026(1), that carries any sentence of imprisonment], is entitled . . . [t]o be represented by an attorney to the same extent as a person having his own counsel . . . ." 13 V.S.A. § 5233(a)(1) provides the right "[t]o be counseled and

defended at all stages of the matter beginning with the earliest time when a person providing his own counsel would be entitled to be represented by an attorney . . . ." There can be no doubt that a proceeding to determine whether the accused should be examined and, if so, whether he should be committed to the state hospital for such an examination, is "a stage of the proceeding," and one in which "a person providing his own counsel would be entitled to be represented by an attorney." Therefore, we hold that the defendant was entitled under the public defender statute to the appointment of counsel at this stage of the proceedings. The failure of the trial court to appoint him one constituted reversible error.

After the State dismissed the criminal charges, the court conducted a hearing under 13 V.S.A. §§ 4820–4822 on the question of whether the defendant should be hospitalized. Under § 4822(a) the standard for hospitalization is the same as that for civil commitments—that the person is "in need of treatment" as defined in 18 V.S.A. § 7101(17).

■ A "person in need of treatment" is one who is mentally ill and as a result of that illness is a danger to himself or to others. 18 V.S.A. § 7101(17). The defendant concedes that there was sufficient evidence to show that he was suffering from a mental illness. He challenges, however, the adequacy of the evidence and the findings on the issue of dangerousness. We agree that the findings on said issue are insufficient.

■ The court found that the defendant was a danger to himself because "[h]e cannot live alone and get meals, attend to his personal hygiene, hold a job, or get along on the street without presenting a danger to himself." This finding, however, is irrelevant. The evidence showed that the defendant did not face the prospect of living alone. When not at the hospital, he lived with his family. As the United States Supreme Court wrote in *O'Connor* v. *Donaldson*, 422 U.S. 563, 575 (1975), "while the State may arguably confine a person to save him from harm, incarceration is rarely if ever a necessary condition for raising the living standards of those capable of surviving safely in freedom, on their own or with the help of family or friends." There was no suggestion that the defendant would not be adequately provided for among his family.

■■ The court also made findings concerning the defendant's alleged dangerousness to others. It found that the defendant "becomes angry when people do not understand him and in such states can be a danger to himself and others." This finding was predicated on a psychiatrist's testimony that when the defendant "is most disturbed he presents a danger, a danger of being arrested, a danger of being assaulted by people that don't understand him and those are the things that are the dangers with him—the social consequences of his behavior." The court thus justifies committing the defendant on the possibility that he, as a mentally ill individual, might offend someone and be attacked. Commitment on this basis is scarcely different from commitments whose purpose is "to save its citizens from exposure to those whose ways are different" and concerning which the Supreme Court wrote: "Mere public intolerance or animosity cannot constitutionally justify the deprivation of a person's physical liberty." *Id.*

The record in this case suggests that the doctors and the court wanted the ability to undertake treatments for the defendant, to which they knew he would object. Even if this course were medically advisable, it could not justify commitment in the absence of proof and sufficient findings that the defendant's illness caused him to be a danger to others or to himself. Since there was no such proof nor findings, the court's order of commitment for hospitalization is unsupportable. Therefore, we reverse.

*Reversed.*

Peck, J., dissenting. I disagree with the view of my colleagues that defendant does not present a danger to himself sufficient to warrant incarceration for treatment. Accordingly, I respectfully dissent for the reasons stated below.

At the outset, I do agree with the majority to the extent the opinion holds that commitment is seldom justified merely to raise the living standard "of those capable of surviving safely in freedom, on their own or with the help of family or friends." *O'Connor v. Donaldson*, 422 U.S. 563, 575 (1975). If there were no more than that involved here reversal would be appropriate.

Whether or not defendant is a danger to others is uncertain; nevertheless, as far as being a danger to himself, I am satis-

fied that he is. We do not have here a mere unfortunate incompetent who mumbles harmlessly about the streets. Defendant's conduct leading to these proceedings is apparently typical of what may be expected, with the potential for assault upon his person by those who may take offense at his wild, screaming outbursts in public places. It may be argued also, that if such a possible assault should occur, defendant would very naturally and understandably defend himself, perhaps with considerable violence, thereby becoming a threat to the safety of those who might intervene to separate the antagonists or restrain their conduct.

Contrary to the majority view then, I am of the opinion that commitment is appropriate. It is considerably different, in my view, from those cases where incarceration is only for the purpose of saving citizens from the discomfiture of having someone in their midst whose ways are different. Commitment here would not be the result of mere public intolerance and animosity.

Finally, one is compelled to ask how much disturbance in places open to the general public for business must the proprietors and their customers tolerate from a clearly mentally disturbed person before commitment for treatment is justified. Is the only recourse a long series of breach of peace charges, countered by an insanity defense? I cannot conceive that defendant's family can be expected either to accompany him wherever he goes, or to keep him off the streets.

I would affirm.